UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ROMEO THOMAS;<br>RACHEL R. THOMAS;<br>SUMI R. THOMAS;<br>  1220 Lexham Dr<br>  Marietta, GA 30068<br><br>                         Plaintiff<br><br>                v.<br><br>ALEJANDRO MAYORKAS, in his official capacity, Secretary, U.S. Department of Homeland Security;<br>TRACY RENAUD, in his official capacity, the Senior Official Performing the Duties of the Acting Director, U.S. Citizenship and Immigration Services;<br>  2707 Martin Luther King Jr. Ave, SE<br>  Washington, DC 20528-0485<br><br>MERRICK B. GARLAND, in his official capacity, Attorney General, Office of Attorney General, U.S. Department of Justice;<br>  950 Pennsylvania Avenue, NW<br>  Washington, DC 20530-0001<br><br>                         Defendant(s). | Civil Action No **1:21-cv-896** |

**PLAINTIFFS' ORIGINAL COMPLAINT
FOR VIOLATION OF THE APA AND WRIT IN THE NATURE OF
MANDAMUS**

Hashim G. Jeelani, Attorney for Plaintiff, JEELANI LAW FIRM, PLC, 28411 Northwestern Hwy, Suite 875, Southfield, Michigan 48034, Ph: 248-850-7841, Facsimile: 312-767-9030, Email: hashim@jeelani-law.com.

1

## INTRODUCTION

COME NOW ROMEO THOMAS, (hereinafter "ROMEO" or collectively "Plaintiffs") RACHEL R. THOMAS, (hereinafter "RACHEL" or collectively "Plaintiffs") SUMI R. THOMAS, (hereinafter "SUMI" or collectively "Plaintiffs") by and through the undersigned attorney, in the above cause, and state as follows:

1. This action is brought as a result of Defendants' gross mishandling and failure to properly adjudicate Plaintiffs' Forms I-485, Application for Adjustment of Status ("Applications" or "Adjustment Filings") within a reasonable period of time.

2. Plaintiff ROMEO has invested $500,000 in a qualifying investment under the Eb5 Program. The Petition was approved by United States Citizenship and Immigration Service ("USCIS") on September 9, 2019. **[EXHIBIT A].** The Department of State has indicated that green cards are now available for all individuals, save for those from China, that have an approved investor petition, regardless of when they have filed. Moreover, in January of 2020, USCIS announced the implementation of a protocol wherein they would provide preference to those individuals such has the Plaintiffs due to the fact that their priority date is current and a green card is available to them. **[EXHIBIT B].**

3. Despite the announcement of this new protocol, and the passage of over 18 months, THOMAS'S Application is still inexplicably pending with USCIS. From the inception, USCIS erroneously issued the receipt notices for Plaintiffs' Applications with an incorrect priority date. Thereafter, USCIS has repeatedly and inexplicably transferred the Plaintiffs' cases to various Service Centers that do not typically process the Plaintiffs' case types. These incorrect priority dates and transfers further suggest that Plaintiffs' Applications are being mishandled and will be subject to further, unreasonable delay. If USCIS continues to delay the adjudication of the

Applications, the number of green cards available for investors may be exhausted and Plaintiffs may be forced to wait years until they are able to receive a green card through their investment.

4. Defendants cannot reasonably continue to use COVID-19 as a defense to their failure to adjudicate Plaintiffs' Applications as any in-person interactions that are necessary or routine have already taken place; as such, COVID-19 related issues do not prohibit an officer's issuance of a decision in this matter.

5. The Plaintiffs have a clear right to a proper adjudication of the Adjustment Filings in a timely manner and this right has not been recognized by USCIS.

6. The delay in making a decision on Plaintiffs' Applications extends well beyond Congress's guideline of 180 days for immigration benefits to be decided under 8 U.S.C. § 1571.

7. The final adjudication of the Adjustment Filings is a ministerial, nondiscretionary task that Defendants must perform within a reasonable period of time. 5 U.S.C. §555(b).

8. Defendants are in violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. As such, this action is brought to compel Defendants and those acting under them to take action on the Adjustment Applications.

## PARTIES

9. Plaintiff ROMEO THOMAS is a citizen of India and, for the purposes of this action, is a resident of Cobb County, Georgia.  He is the beneficiary of an approved Form I-526, Immigrant Petition by Alien Investor with United States Citizenship and Immigration Services (hereinafter "USCIS"), thereby allowing him the right to file Form I-485, Application for Adjustment of Status [USCIS case number: LIN-209-003-4005].

10.	Plaintiff RACHEL R. THOMAS is a citizen of India and, for the purposes of this action, is a resident of Cobb County, Georgia.  She is the derivative beneficiary of an approved Form I-526, Immigrant Petition by Alien Investor with United States Citizenship and Immigration Services (hereinafter "USCIS"), thereby allowing her the right to file Form I-485, Application for Adjustment of Status [USCIS case number: LIN-209-003-4002].

11.	Plaintiff SUMI R. THOMAS is a citizen of India and, for the purposes of this action, is a resident of Cobb County, Georgia.  She is the derivative beneficiary of an approved Form I-526, Immigrant Petition by Alien Investor with United States Citizenship and Immigration Services (hereinafter "USCIS"), thereby allowing her the right to file Form I-485, Application for Adjustment of Status [USCIS case number: LIN-209-003-3999].

12.	Defendant ALEJANDRO MAYORKAS is the Secretary of the United States Department of Homeland Security (hereinafter "DHS"). This action is filed against him in his official capacity. Defendant MAYORKAS is responsible for the enforcement of the INA and for the delegation of adjudicatory and discretionary authority to other employees of the DHS and USCIS pursuant to 8 U.S.C. § 1103(a); 8 C.F.R. § 2.1.

13.	Defendant TRACY RENAUD is the Senior Official Performing the Duties of the Director of USCIS; he is an official generally charged with supervisory authority over all operations of USCIS under 8 C.F.R. § 103.1. This action is filed against him in his official capacity.

14.	Defendant MERRICK B. GARLAND is the Attorney General of the United States; he is an official generally charged with supervisory authority over all operations of the Department of Justice (hereinafter "DOJ") under 28 C.F.R. § 0.5.  This action is filed against him in his official capacity.

## JURISDICTION AND VENUE

15. This Court has jurisdiction to hear this complaint and the claims stated herein by virtue of 28 U.S.C. §§ 1331, § 1361 and §2201 because this is a federal mandamus action brought to compel Defendants to perform their statutory duties owed to the Plaintiffs. This Court has additional jurisdiction by virtue of the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.,* because Plaintiffs are seeking judicial review of inaction by one or more of the Defendants.

16. Venue is proper in the District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e) in that this is the district in which one of the Defendants resides.

## EXHAUSTION OF REMEDIES

17. The Plaintiffs have repeatedly requested the Defendants to make a final decision on the Adjustment Filings. Further, Plaintiffs have initiated numerous inquiries with USCIS. After such requests and inquiries failed, Plaintiffs have notified the Defendants of their intent to file suit. The Defendants have failed to respond to such notice. The threat of judicial intervention has been meaningless in expediting a resolution.

18. The Plaintiffs have exhausted his administrative remedies. The Plaintiffs have supplied USCIS with documents that establish Plaintiffs' eligibility for approval of their Adjustment Filings.

19. There are no further administrative remedies available for Plaintiffs to utilize.

## BACKGROUND AND FACTUAL ALLEGATIONS

### A. Eb5 Program in General

20. Through passage of the Immigration Act of 1990, Congress created the USCIS Immigrant Investor Program, also known as the Employment-Based Fifth Preference ("EB-5") Program. Pub. L. No. 101-649, § 121(a), 104 Stat. 4978, 4989-90 (1990) (codified at

INA § 203(b)(5), 8 U.S.C. § 1153(b)(5)). The EB-5 Program's purpose is to stimulate the U.S. economy through job creation and capital investment by foreign investors. Under the EB-5 Program, foreign investors have the opportunity to obtain U.S. lawful permanent resident status for themselves, their spouses, and their minor unmarried children by making a certain level of capital investment and associated job creation or preservation in the United States. In 1993, Congress announced a related pilot program – now known simply as the "Immigrant Investor Program" – that introduced the concept of the "regional center." Department of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act of 1993. Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874 (1992). Regional centers were designed to pool investor money in a defined industry and promote economic growth in a specific geographic area.

21.   The regional center model within the Immigrant Investor Program offers an immigrant investor already-defined investment opportunities, thereby reducing his or her responsibility to identify acceptable investment vehicles. Either U.S. citizens or foreign nationals can operate regional centers, which can be any economic unit, public or private, that is engaged in the promotion of economic growth, improved regional productivity, job creation, or increased domestic capital investment. As of February 17, 2020, USCIS reports that it has approved 783 regional centers throughout the United States. USCIS, Immigrant Investor Regional Centers Homepage, available at https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-immigrant-investor-regional-centers/approved-eb-5-immigrant-investor-regional-centers (last visited February 17, 2020).

22.   The EB-5 Program has three principal elements: (1) the immigrant's investment of

capital, (2) in a new commercial enterprise, (3) that creates jobs.

23. The statute governing the EB-5 Program provides that the immigrant investor must invest at least $1,000,000 in capital in a new commercial enterprise that creates not fewer than ten jobs. 8 U.S.C. § 1153(b)(5)(C)(i). An exception exists if the immigrant investor invests his or his capital in a new commercial enterprise that is principally doing business in, and creates jobs in, a "targeted employment area." In such case, the immigrant investor must invest a minimum of $500,000 in capital. 8 U.S.C. § 1153(b)(5)(C)(ii); 8 C.F.R. § 204.6(f)(2).[1]

24. The statute governing the EB-5 Program defines a "targeted employment area" as, at the time of investment, a rural area or an area that has experienced unemployment of at least 150 percent of the national average rate. 8 U.S.C. § 1153(b)(5)(B)(ii). Under 8 C.F.R. § 204.6(i), a state government may designate a geographic or political subdivision within its boundaries as a targeted employment area based on high unemployment in that area.

25. A "commercial enterprise" is defined as "any for-profit activity formed for the ongoing conduct of lawful business." 8 C.F.R. § 204.6(e). Commercial enterprises established after November 29, 1990, are considered "new" commercial enterprises for purposes of the EB-5 Program. Id.

26. The job-creation requirement for EB-5 participants provides that the investment must create no fewer than ten full-time jobs in the United States for authorized workers, not including the immigrant investor, his or his spouse, and any sons or daughters the investor may have. 8 U.S.C. § 1153(b)(5)(A)(ii).

---

[1] Plaintiff's qualifying investment was made prior to the amendment of 8 C.F.R. § 204.6(f) which increased the minimum investment amounts for qualification.

A. **Plaintiff' Adjustment Filings**

27. On September 9, 2019, USCIS acknowledged Plaintiff THOMAS's qualifications as a qualified investor in the EB5 program by approving his Form I-526, Immigrant Plaintiff by Alien Entrepreneur. **[EXHIBIT A].**

28. On October 7, 2019, Plaintiffs properly filed their Form I-485, Application for Adjustment of Status and paid the required fees of $1,225 each with USCIS. **[EXHIBIT C].**

29. Through a notice dated October 23, 2019, USCIS erroneously issued receipts for the Plaintiffs' filings with incorrect priority dates. **[EXHIBIT C].**

30. On October 30, 2019, USCIS inexplicably transferred the Plaintiffs cases from the Nebraska Service Center, to the Texas Service Center, which does not traditionally process the Plaintiffs' case types. **[EXHIBIT D].**

31. On November 29, 2019, again, USCIS inexplicably transferred the Plaintiffs' cases from the Texas Service Center to the National Benefits Center, which also does not traditionally process the Plaintiffs' case types. **[EXHIBIT E].**

32. On May 19, 2020, after five months pending without an explanation at the National Benefits Center, the case was transferred to the California Service Center, which traditionally processes the Plaintiffs' case type. **[EXHIBIT F].**

33. As of this date, Plaintiffs' Applications remain pending with USCIS at the California Service Center.

34. Plaintiffs have made numerous inquiries over the past 18 months with USCIS and have repeatedly requested the proper adjudication of their Adjustment Filings.

35. Plaintiffs' inquiries have resulted in continuous responses from USCIS stating that the Applications and associated requests are still pending.

36. Plaintiffs' Applications now continue to be pending with USCIS for 18 months with no end in sight.

37. Beyond stating that Plaintiffs must wait, Defendants have refused to provide any substantial explanation which would merit the need for withholding adjudication on Plaintiffs' cases for over an 18-month period of time.

38. Plaintiffs have endured significant financial burdens as a result of the unreasonable period of time that the Adjustment Filings have been pending. Despite showing that they merit approval of the Applications, Plaintiffs have, without any legitimate and lawful reason, been deprived of the rights and benefits that are afforded to immigrant investors under the Eb5 Program.

39. The delay in adjudication impacts Plaintiffs' ability to immigrate to the United States, risks the potential loss of their eligibility for permanent resident status due to visa retrogression and/or financial losses of their investment amount caused by COVID-19, delays the commencement of their statutorily mandated two-year conditional permanent residence period under 8 U.S.C. § 1186b, and postpones the date on which they will be eligible to apply for naturalization to become U.S. citizens.

## COUNT I

### VIOLATION OF THE APA- All Plaintiffs

40. All prior paragraphs are re-alleged as if fully stated herein.

41. Plaintiffs, based on the approval of an investor petition under the EB5 program, have a statutory right to apply for adjustment of their status to permanent residents by filing Form I-485, Application for Adjustment of Status pursuant to INA 245(a).

42. Defendants have a duty to adjudicate Plaintiffs' Applications within a reasonable period of time under 5 U.S.C. §555(b).

43. The delay in making a decision on Plaintiffs' Applications extends well beyond Congress's guideline of 180 days for immigration benefits under 8 U.S.C. § 1571.

44. The duty owed to Plaintiffs is ministerial and so plainly prescribed as to be clear and free from doubt.

45. Defendants have conducted the significant investigation and have sufficient information and documentation about Plaintiffs to adjudicate the Application.

46. A period of 18 months has elapsed since the Plaintiffs paid the filing fees and filed their Applications for Adjustment of Status with USCIS.

47. USCIS has grossly mishandled the adjudication of their applications and continues to do so as of this date.

48. Defendants have failed in their statutory duty to adjudicate the Applications in a reasonable time.

49. Defendants have violated the Administrative Procedures Act, 5 U.S.C. § 701 et seq., as they are unlawfully withholding action on the Applications and have failed to carry out the adjudicative functions delegated to them by law with regard to Plaintiffs' case.

50. Defendants' delay in this case is, as a matter of law, arbitrary, and not in accordance with the law. Defendants have willingly and unreasonably delayed and have refused to adjudicate Plaintiffs' Application, thereby depriving Plaintiffs of the rights to which they are entitled.

51. In addition, as a result of this delay, Plaintiffs have incurred enormous costs and significant attorney's fees. Also, as a result of Defendants' actions, Plaintiffs have been denied their right to apply for Permanent Residency in the United States and enjoy the benefits thereof.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays:

1. That the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order mandating a time certain to properly adjudicate Plaintiffs' Applications.

2. Additionally, that the Court award reasonable attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 504, and such other and future relief as this Court deems proper under the circumstances.

Date: April 1, 2021                              Respectfully submitted,

     /s Hashim G. Jeelani
**Hashim G. Jeelani, Esq. (MI0081)**
**JEELANI LAW FIRM, PLC**
**28411 Northwestern Hwy, Suite 875**
**Southfield, MI 48034**
**hashim@jeelani-law.com**
**Phone:(248) 850-7841**
**Fax:(312) 767-9030**
*Counsel for Plaintiff*